# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MUNA MATAR,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:15-cv-291
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 9), the

Commissioner's response in opposition (Doc. 10), and plaintiff's reply memorandum (Doc. 11).

## I. Procedural Background

Plaintiff filed her applications for DIB and SSI in June 2011, alleging disability since

June 2, 2010, due to multi-level degenerative disc disease with foraminal narrowing, thyroid

problems, and blood pressure problems. These applications were denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Deborah Smith. Plaintiff and a vocational expert (VE) appeared

and testified at the ALJ hearing. On November 21, 2013, the ALJ issued a decision denying

plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was

denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The [plaintiff] has not engaged in substantial gainful activity since June 2, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease of the cervical and lumbar spines; headaches; a history of nausea, vomiting and gastrointestinal issues; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the [plaintiff] can occasionally stoop or climb ramps or stairs; and never climb ladders, ropes, or scaffolds. The [plaintiff] is limited in reaching to the front and/or laterally and overhead with the left upper extremity. The [plaintiff] must avoid all exposure to hazards.

6. The [plaintiff] is capable of performing her past relevant work as a waitress, cashier, restaurant manager, and cafeteria worker. This work does not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 CFR 404.1565 and 416.965).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 2, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 20-30).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.  Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not

giving weight to treating physician's opinion, thereby violating the agency's own regulations).

4

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred by not properly addressing several impairments in plaintiff's RFC; (2) the ALJ's RFC is not supported by substantial evidence; and (3) the ALJ improperly weighed the opinion evidence. (Docs. 9 and 11).

1. <u>Whether the ALJ erred by not properly addressing several impairments in plaintiff's RFC.</u>

Plaintiff asserts the ALJ erred by (1) failing to determine whether plaintiff's dizziness was a severe or non-severe impairment and failing to provide limitations in the RFC for dizziness; (2) failing to adequately accommodate plaintiff's gastrointestinal problems and headaches in the RFC; and (3) failing to even mention or account for plaintiff's depression in assessing her disability claim.

*a. Dizziness*

Plaintiff contends that the ALJ failed to adequately accommodate her dizziness in assessing her RFC because the RFC does not include a provision for plaintiff's use of a walker. (Doc. 9 at 6). According to plaintiff, her treating internist, Brenda Manfredi, M.D., prescribed a walker due to her dizziness and falling. (*Id.*, citing Tr. 49, 115, 491).

In assessing plaintiff's RFC, the ALJ determined that plaintiff should never climb ladders, ropes, or scaffolds, and she must avoid all exposure to hazards. The ALJ discussed the evidence of plaintiff's dizziness when reviewing the medical evidence. (Tr. 22-26). However, the ALJ did not determine that "dizziness" was a medically determinable impairment and did not state whether plaintiff's dizziness was severe or nonsevere. The ALJ did not err in this regard.

A severe impairment or combination of impairments is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921.

Basic work activities relate to the abilities necessary to perform most jobs, such as the ability to perform physical functions. 20 C.F.R. §§ 404.1521(b), 416.921(b). In the physical context, a severe impairment or combination of impairments means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. *See* 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element that plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "de minimis hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers v. Commissioner*, 486 F.3d 234, 243 n.2 (6th Cir. 2007).

Contrary to plaintiff's argument, Dr. Manfredi's notes do not show that she prescribed a walker for her. (Tr. 491). While Dr. Manfredi's notes of January 11, 2013, document plaintiff's complaints of dizziness and falling, they do not include a recommendation or prescription for a walker. (Tr. 491). On her next visit with Dr. Manfredi on February 14, 2013, plaintiff indicated she was "negative for dizziness, weakness and light-headedness." (Tr. 488). Plaintiff did not complain about dizziness in any of her subsequent visits with Dr. Manfredi. (Tr. 472, 481, 484). Nor did Dr. Manfredi list dizziness as a diagnosis or symptom in assessing plaintiff's functional capacity. (Tr. 743-44). In addition, Dr. Manfredi's functional capacity assessment states that plaintiff does not need a cane or other assistive device while engaging in

occasional standing or walking. (Tr. 744). Plaintiff has not identified any medical evidence

showing she requires an assistive device when walking or standing or that any physician

imposed additional limitations due to her dizziness that were not already accommodated by the

ALJ in the RFC. As the ALJ acknowledged and discussed the evidence of plaintiff's dizziness

and reasonably accommodated plaintiff's complaints by limiting her to no climbing of ladders,

ropes, or scaffolds and no exposure to hazards, the ALJ did not err by failing to characterize

plaintiff's dizziness as a severe or nonsevere impairment. The ALJ considered all of plaintiff's

impairments (both severe and non-severe) in determining plaintiff's RFC, and any alleged

failure to characterize certain impairments as "severe" at step two of the sequential evaluation is

legally irrelevant and constitutes harmless error. *Anthony v. Astrue,* 266 F. App'x 451, 457 (6th

Cir. 2010) (citing *Maziarz v. Sec. of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.

1987)).

   *b. Gastrointestinal problems and headaches*

   Plaintiff contends the ALJ failed to adequately accommodate plaintiff's gastrointestinal

problems and headaches in the RFC, despite finding both are severe impairments. Plaintiff

contends these impairments cause attendance and punctuality problems, frequent and lengthy use

of the restroom, and difficulties with attention and concentration, and the ALJ failed to properly

incorporate these limitations into plaintiff's RFC. Plaintiff points to medical records showing

her reports of being bed-bound on several occasions as a result of her gastrointestinal

impairments and headaches (Doc. 9 at 3, citing Tr. 484, 488, 491, 502), and plaintiff argues "she

obviously would be absent from work during similar occasions." (Doc. 9 at 7). Plaintiff also

alleges she "would obviously need leeway to visit the restroom at will to accommodate her

urinary stress incontinence, vomiting, and bowel problems," which the RFC fails to

accommodate.  (*Id.*).  In addition, plaintiff alleges that she "would have difficulty with attention and concentration" from headache pain and gastrointestinal distress, which would limit her "to simple repetitive tasks and to only short episodes of concentration on a given task," and the ALJ failed to include such limitations in the RFC.  (*Id.*).

The ALJ properly considered plaintiff's history of gastrointestinal impairments and headaches in assessing plaintiff's RFC.  (Tr. 22-26).   The record shows plaintiff experienced periodic nausea, vomiting, and bowel issues.  She was hospitalized for nausea and vomiting and/or chest discomfort on May 13-14, 2011 (Tr. 350-56), June 25-26, 2011 (Tr. 368-70), and July 21-22, 2011 (Tr. 393-94).  The records from Dr. Manfredi and Dr. Kakarlapudi, a gastroenterologist, show periodic complaints of abdominal pain, bloating, nausea, and/or vomiting.  (Tr. 488, 502, 516, 726, 730, 734, 766, 769).  However, the record also shows that plaintiff denied nausea, vomiting, abdominal pain, and diarrhea at appointments in February 2011 (Tr. 385), April 2011 (Tr. 381, 383), November 2011 (Tr. 414), January 2012 (Tr. 717), December 2012 (Tr. 494, 499, 734), May 2013 (Tr. 726, 839), and September 2013 (Tr. 766).  Plaintiff underwent a gastric emptying scan in May 2013, which was normal.  (Tr. 725).  Plaintiff had an extensive GI workup which included a negative EGD and colonoscopy.  (Tr. 771).

Plaintiff also has a history of and treatment for headaches.  Plaintiff's headaches were intermittent, and plaintiff often denied having headaches during the relevant time frame.  (*Compare* Tr. 473, 485, 488, 494, 506, 516 with Tr. 358, 359, 386, 731, 802).  Dr. Manfredi ordered an MRI for plaintiff's chronic headaches, which was "totally normal," and she opined there was "no reason for headaches seen."  (Tr. 522-23).  In June 2013, plaintiff's neurologist stated there was an "element of medication overuse headaches from taking over-the-counter medications," and he recommended that plaintiff limit the use of such medications.  (Tr. 757).

8

He noted that plaintiff's MRI and CT angiogram showed no significant acute abnormalities that can explain plaintiff's headaches and her temporal artery biopsy was negative. (*Id.*). The following month, when plaintiff was seen in the emergency department, she reported no headaches. (Tr. 802).

Plaintiff essentially argues that because the ALJ determined that plaintiff's gastrointestinal issues and headaches are severe impairments, the ALJ should have included the specific limitations identified by plaintiff in the RFC to accommodate these impairments. Plaintiff's argument improperly conflates the Step Two severity analysis with the RFC determination. The finding of a "severe" impairment at Step Two, *i.e.,* an impairment that has "more than a minimal effect" on a claimant's ability to perform basic work activities, is a minimal hurdle that justifies a continuation of the sequential evaluation process, including the determination of the claimant's RFC. *See Maziarz,* 837 F.2d at 244. However, the mere existence of a severe impairment does not necessarily establish any functional limitations or disability. The RFC describes "the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from. . . ." *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240 (6th Cir. 2002). "The regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Id.* (citation and internal quotation omitted).

Plaintiff relies primarily on her subjective complaints to show the limiting effects of her gastrointestinal impairments and headaches, and the record contains few clinical and objective

medical findings to support the debilitating symptoms plaintiff alleges. The ALJ carefully considered the evidence of plaintiff's gastrointestinal and headache impairments and determined plaintiff has the RFC for a limited range of light work. Plaintiff does not cite to any evidence showing that any physician of record imposed any functional limitations, such as leeway to visit the restroom, to accommodate plaintiff's intermittent gastrointestinal impairments. Nor has any physician opined that plaintiff has difficulties with attention and concentration such that she is limited "to simple repetitive tasks and to only short episodes of concentration on a given task" as a result of her gastrointestinal and headache impairments. Plaintiff has not cited any other medical evidence to substantiate her allegations that her headaches and gastrointestinal impairments restrict her in the manner she alleges. As the ALJ thoroughly considered the evidence pertaining to plaintiff's headaches and gastrointestinal impairments, and substantial evidence supports the ALJ's finding that these impairments do not impose functional limitations in addition to those included in the RFC finding, plaintiff has not shown any error in this regard.

c. *Depression*

Plaintiff also contends the ALJ erred when she failed to mention or account for plaintiff's depression in assessing her disability claim. Plaintiff alleges that Dr. Manfredi treated her depression with Paxil and the notes of Dr. Manfredi and other medical sources include observations about plaintiff's depression. Plaintiff contends "there was evidence from which to form an opinion regarding the nature of functional limitations created by [p]laintiff's depression." (Doc. 9 at 6, citing Tr. 474, 499, 517, 726, 731).

The ALJ did not commit reversible error by not discussing plaintiff's depression in the written decision. First, the evidence cited by plaintiff does not support a finding that plaintiff had any functional limitations as a result of depression. Dr. Manfredi noted plaintiff was

"positive for dysphoric mood" and prescribed Paxil in August 2012. (Tr. 516-17). In October 2012, plaintiff did not exhibit a depressed mood. (Tr. 505). In December 2012, Dr. Manfredi noted that plaintiff was "nervous/anxious" (Tr. 499), but she did not note the presence of depression. Dr. Manfredi noted in April 2013 that on examination plaintiff's "mood appears not anxious. She is slowed. She does not exhibit a depressed mood." (Tr. 473). Plaintiff declined to increase her dosage of Paxil at that time. (Tr. 474). Plaintiff's gastroenterologist noted she was "positive for depression" in January and May 2013. (Tr. 726, 731). Although some of the records reflect observations of depression, there is no indication in the notes from Dr. Manfredi or plaintiff's gastroenterologist that plaintiff complained of any limitations from depression or that her physicians imposed any restrictions on her as a result of depression.

Second, it does not appear from the record that plaintiff ever alleged work-related limitations from a mental impairment. Plaintiff did not allege she suffered from any mental impairments when she applied for benefits. Nor did plaintiff testify about or allege at her administrative hearings that she suffered from a severe mental impairment or that a mental impairment affected her ability to work. (Tr. 115-16). There was only one brief mention of a mental condition at the first hearing when plaintiff's counsel reviewed Dr. Manfredi's records with the ALJ and made one note of a "dysphoric mood, nervous or anxious." (Tr. 119). In addition, the evidence of plaintiff's depression is scant and Dr. Manfredi failed to include depression or any other mental impairments in the list of plaintiff's diagnoses on her RFC questionnaire. (Tr. 743). Plaintiff never sought mental health treatment or counseling of any kind for an alleged mental impairment, and plaintiff has pointed to no evidence indicating any physician or other medical source placed limitations on her ability to work due to a mental impairment. The fact that plaintiff was diagnosed with and received medication for depression

11

does not necessarily mean that plaintiff's depression constitutes a severe impairment that imposes work-related limitations. *See Higgs,* 880 F.3d at 863 (mere diagnosis of an impairment does not establish the condition is disabling). Nor was the ALJ obligated to cite to every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir. 2006). Plaintiff has failed to meet her burden of showing the ALJ committed reversible error by not discussing an alleged mental impairment.

2. Whether the RFC is otherwise supported by substantial evidence.

Plaintiff contends the ALJ's RFC finding is not supported by substantial evidence for several other reasons. First, plaintiff acknowledges that she had multiple physical examinations which revealed normal physical findings, aside from tenderness to palpation and reduced range of motion at times. Nevertheless, plaintiff contends more recent examinations revealed reduced strength in her upper extremities and increased reflexes and tone in her ankles. (Doc. 9 at 8, citing Tr. 485, 689-90).[1] Plaintiff appears to suggest that these findings warrant a more restrictive RFC.

The ALJ thoroughly considered all of the medical evidence, including the two examinations from March 2012 and March 2013 cited by plaintiff, which showed evidence of bilateral upper extremity weakness. (Tr. 26). As the ALJ's decision reflects, the ALJ also considered the balance of the record evidence showing plaintiff had no weakness of the upper extremities on every other doctor visit during the relevant time frame, including the month immediately following the March 2013 findings. (Tr. 25, 447, 452, 457, 460, 473, 739). The ALJ weighed the conflicting evidence in this regard and reasonably fashioned an RFC which

---

[1] To the extent plaintiff reiterates that the ALJ's RFC finding is not substantially supported because her gastrointestinal problems limit her ability to stand and walk (Doc. 9 at 8), this alleged error was addressed in connection with the first assignment of error.

limited plaintiff's ability to reach to the front and/or laterally and overhead with the left upper extremity.[2]  The Court finds no error in this regard as it is the duty of the ALJ, and not the Court, to resolve conflicts in the medical evidence. *Chandler v. Comm'r of Soc. Sec.*, 124 F. App'x 355, 358 (6th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

With regard to the February 2012 findings of increased reflexes and tone in plaintiff's ankles (Tr. 457), plaintiff has not identified the significance of these two isolated findings to her RFC.  In any event, examinations after the February 2012 exam cited by plaintiff show plaintiff had normal reflex and tone findings.[3]  (Tr. 442-43, 445, 452).  Nor has plaintiff shown that substantial evidence supports additional functional limitations resulting from the February 2012 ankle findings.

Plaintiff also alleges the ALJ erred in stating that plaintiff had only one to three physical therapy visits when one progress note references eight visits.  (Tr. 505).  Plaintiff further takes issue with the ALJ's statement that no doctor supported surgery when Dr. Berger, a neurosurgeon, wrote he would consider surgical decompression after plaintiff tried injections.  (Tr. 444).  Plaintiff also contends the ALJ in assessing her RFC should not have attacked plaintiff's credibility on the basis of her conservative treatment.

The ALJ reasonably determined that if plaintiff's condition was disabling, it would be expected that her treatment would have been more aggressive and the medical record would document more serious signs and symptoms.  (Tr. 26).  Whether plaintiff actually had three or eight physical therapy visits, it was not unreasonable for the ALJ to rely on the actual physical therapy notes in the record rather than a single notation based on plaintiff's report to conclude

---

[2] The Court acknowledges that Dr. Manfredi further restricted plaintiff's ability to reach; however, for the reasons explained *infra* in Section 3, the ALJ properly gave "little weight" to Dr. Manfredi's opinion.  (Tr. 21).
[3] The Court notes that subsequent to the examination findings relied on by plaintiff, her physician in July 2012 gave her "a release for full activity at the gym."  (Tr. 445).

that plaintiff had a limited number of physical therapy visits.  In addition, the ALJ appropriately considered plaintiff's conservative treatment in assessing plaintiff's complaints of disabling pain on her RFC.  *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001-02 (6th Cir. 2011) (ALJ properly noted that plaintiff's "modest treatment regimen [ ]-consisting solely of pain medication-was inconsistent with a finding of total disability") (citing *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007)).  *McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, 2000 WL 687680, at \*4 (6th Cir. May 19, 2000) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."); 20 C.F.R. § 404.1527(c)(2) ("We will look at the treatment the source has provided . . . .")).  The ALJ accurately noted that plaintiff "has not undergone any more invasive treatment such as surgery" (Tr. 27) and Dr. Berger's statement that he would "consider" surgery if plaintiff failed to respond to injections is not to the contrary.  Plaintiff's second assignment of error should be overruled.

3.  <u>Whether the ALJ erred in weighing the opinions of plaintiff's treating physicians.</u>

Plaintiff alleges that the ALJ erred when she gave "little weight" to the opinions of treating physicians Drs. Manfredi and Haney and "significant weight" to the opinions of the state agency physicians.  Plaintiff alleges that the ALJ incorrectly reviewed the evidence of plaintiff's dizziness, gastrointestinal problems, headaches, and depression, and the ALJ's stated reasons for rejecting the opinions are without merit.  (Doc. 9 at 11).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

14

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. When treating sources offer opinions, the Social Security Administration is to give such opinions the most weight and is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).

*a. Dr. Haney*

On November 21, 2011, Amy Smith Haney, M.D., wrote a letter that stated, "My patient, Muna Matar, is currently being treated for cervical radiculopathy making her unable to work."

(Tr. 433). The ALJ gave little weight to Dr. Haney's opinion for the following reasons: it is not supported by or consistent with the objective medical evidence; plaintiff's objective physical exams have been essentially normal with the exception of the subjective findings of tenderness and decreased range of motion; plaintiff's treatment has consisted of medications and a few physical therapy visits, and there is no indication she has undergone pain management, chiropractic treatment, braces, a TENS unit, or repeat injections; she has not had surgery and not required hospitalization for her cervical spine; Dr. Haney did not provide any findings or explanation to support her opinion; and plaintiff does not have significant findings on objective testing, abnormal findings on physical examinations, or a treatment history consistent with disabling conditions. (Tr. 27).

Plaintiff does not address the ALJ's reasons for discounting Dr. Haney's treating physician opinion. Rather, in her reply brief, plaintiff alleges she was hospitalized on multiple occasions during the relevant time frame and was described on several occasions as appearing "distressed" during physical examination. (Doc. 11 at 3, citing Tr. 472, 491, 502).

First, to the extent the ALJ gave little weight to Dr. Haney's conclusion that she considered plaintiff to be "unable to work" because of cervical radiculopathy, the ALJ justifiably discounted Dr. Haney's opinion. An ALJ is not required to accept a physician's conclusion that her patient is disabled. 20 C.F.R. §§ 404.1527(d)(1)(3), 416.927(d)(1)(3). Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a physician's opinion that her patient is disabled will not be given "any special significance." *Id. See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

16

Second, the ALJ's decision giving little weight to the opinion of Dr. Haney is supported by substantial evidence. The ALJ identified several "good" reasons for discounting Dr. Haney's opinion and those reasons find substantial support in the record. *Smith*, 482 F.3d at 875. As the ALJ pointed out, Dr. Haney did not provide any explanation for her cursory statement that plaintiff was unable to work. In addition, Dr. Haney's opinion is inconsistent with the objective medical evidence. In April 2011, plaintiff had an MRI that showed degenerative joint disease in the cervical spine, but she denied neck stiffness or weakness and on physical exam she had normal range of motion, tenderness, and no edema. (Tr. 381-82, 470). June 2011 emergency department records indicate plaintiff complained of neck and back pain, but she denied numbness, tingling, leg pain, paresthesias, and loss of bowel/bladder control. (Tr. 24, 357-359). On physical examination, plaintiff had full range of motion and full sensation, and her deep tendon reflexes were within normal limits. Her neurological, respiratory, abdominal, and cardiovascular physical examination findings were considered normal. (Tr. 24-25, 357-359). Dr. Haney's July 2011 progress notes show that while plaintiff exhibited tenderness in the cervical area, she was not experiencing fatigue, neck stiffness, chest pain, shortness of breath, wheezing, myalgias, back pain, dizziness, or weakness. (Tr. 25, 378-379). On physical exam, plaintiff had normal range of motion and no edema, and cardiovascular, pulmonary, abdominal, and neurological physical examination findings were normal. (Tr. 25, 378-379). At an examination in September 2011, plaintiff's neurologic, musculoskeletal, chest, and lung examinations were completely normal, and she exhibited normal coordination and gait. (Tr. 25, 403). While plaintiff argues she was hospitalized on multiple occasions (Doc. 11 at 2, citing Tr. 350-56, 368-70, 393, 633-59), none of those hospitalizations were for treatment of cervical radiculopathy or neck pain. The notations that plaintiff appeared "distressed" relate to Dr.

17

Manfredi's treatment and not Dr. Haney's treatment, and plaintiff has not directed the Court's attention to any other specific treatment notes, clinical findings, or evidence in support of her argument.  Plaintiff has not shown that the ALJ erred in weighing Dr. Haney's opinion.

　　*b. Dr. Manfredi*

　　On June 3, 2013, Dr. Manfredi completed a residual functional capacity questionnaire and opined that plaintiff could not perform even sedentary work on a full-time basis. (Tr. 743-44). Dr. Manfredi wrote that she had treated plaintiff on a monthly basis since August 2012. (Tr. 743). Plaintiff's diagnoses included persistent daily headaches, hypertension, hypothyroid, back pain, cervical spondylosis, temporal arteritis, asthma, and impaired fasting glucose. (Tr. 743). Dr. Manfredi opined that plaintiff could not work for any length of time; she could only sit and stand for 15 minutes each at one time; she could lift only five pounds occasionally and no weight frequently; and she would need 15 minute breaks every half hour. (Tr. 743). Dr. Manfredi also opined that plaintiff would not be able to reach at all, and she could only perform fine and gross manipulation bilaterally 5% of the day. (Tr. 744). Dr. Manfredi stated that she expected plaintiff to miss more than four days of work per month due to her impairments and related treatment. (Tr. 744).

　　In assigning "little weight" to Dr. Manfredi's opinion, the ALJ stated:

> Dr. Manfredi did not provide any clinical findings or objective signs of impairments to support these functional limitations. Thus, this assessment on its face does not meet the treating physician rule. Moreover, as indicated above, the record does not contain significant findings on objective testing, abnormal findings on physical examinations, or a treatment history consistent with disabling conditions or the limitations provided by Dr. Manfredi.

(Tr. 27).

18

The ALJ's assessment of Dr. Manfredi's opinion is supported by substantial evidence. The ALJ thoroughly reviewed the medical and other evidence of record and provided "good reasons" for giving little weight to the opinion of Dr. Manfredi. The ALJ reviewed the imaging evidence, including March 2011 x-rays showing multi-level discogenic changes at C3-4 through C6-7 (Tr. 24, 468); an April 2011 MRI showing degenerative joint disease in plaintiff's neck (Tr. 24, 470); a February 2012 MRI showing degenerative joint disease in plaintiff's neck with disc protrusions and the potential for neural effacement at a few levels (Tr. 25, Tr. 698); an April 2012 lumbar MRI showing no definite neural effacement (Tr. 25, Tr. 684); and July 2012 cervical x-rays showing moderate spondylosis with minimal spondylolisthesis (Tr. 25, 683). The ALJ also reviewed Mayfield Clinic exam results from February, March, April, May and July 2012, which revealed mostly unremarkable physical findings. (Tr. 25). Plaintiff had no radicular component to her lumbar or cervical problems. (Tr. 447, 452, 457). Plaintiff exhibited findings of 2+ and equal deep tendon reflexes in the upper and lower extremities; no weakness in the major muscle groups of the upper or lower extremities; no palpable muscle spasms; straight leg raise bilaterally causing leg pain only; normal gait; and no weakness in her legs. (Tr. 25, 447, 452, 454, 456-457). In November 2012, plaintiff exhibited decreased range of motion, pain, and tenderness in her cervical spine, but otherwise her examination revealed normal gait and station, full muscle strength and tone, and normal range of motion in her legs. (Tr. 438).

Plaintiff was examined by Dr. Manfredi in October, November, and December 2012. Plaintiff exhibited numbness to palpation in most of the posterior neck on a single exam (Tr. 505), but she otherwise had normal range of motion in her neck on that and subsequent exams. (Tr. 494, 500, 502, 505). Plaintiff exhibited full range of motion in the upper extremities and normal cardiovascular, pulmonary, neurological, and lymphadenopathy findings. (*Id.*). In

19

February 2013, plaintiff had normal range of motion in her neck and muscular tenderness. (Tr. 488). With the exception of a mild skin rash, the remainder of her exam was normal. (*Id.*). In April 2013, Dr. Manfredi reported "minimally decreased" cervical range of motion and "mild neck pain with upper extremity strength testing" and 5/5 bilateral upper extremity and lower extremity strength. (Tr. 26, 472-473). The remainder of plaintiff's physical examination revealed normal cardiovascular, pulmonary/chest, musculoskeletal, and lymphadenopathy findings. (Tr. 472-473).

In May 2013, physical examinations revealed normal motor, lung, neck, reflex, coordination, and sensation findings (Tr. 726-728) and full range of motion and strength in the upper and lower extremities and normal reflexes, coordination, sensation, and gait/posture. (Tr. 739-40).

The ALJ reasonably determined that the objective tests and physical exams failed to reveal significant or abnormal findings to support Dr. Manfredi's extreme limitations. (Tr. 27). As discussed above, Dr. Manfredi's treatment notes and plaintiff's treatment records from other medical providers consistently show unremarkable cervical, musculoskeletal, and neurological findings, which undermine Dr. Manfredi's more extreme limitations. The ALJ also reasonably determined that plaintiff's treatment history is inconsistent with Dr. Manfredi's opinion of a disabling condition. (Tr. 27). Dr. Manfredi's progress notes from August 2012 through April 2013 reflect only conservative treatment. (Tr. 474, 482, 486, 489, 492, 495, 500, 503, 506, 517). The conservative treatment plaintiff received is a "good reason" for discounting Dr. Manfredi's opinion. *See Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, __ F. App'x __, 2016 WL 124140, at *5 (6th Cir. Jan. 12, 2016) ("The ALJ noted that the records indicate [the plaintiff] received only conservative treatment for her ailments, a fact which constitutes a "good reason" for discounting

a treating source opinion.") (citing *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir.

2015) (finding the ALJ reasonably discounted a doctor's proposed limitations because, among

other things, the claimant was receiving conservative treatment); *McKenzie v. Comm'r of Soc.

Sec.*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (unpublished opinion)

("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."); 20

C.F.R. § 404.1527(c)(2) ("We will look at the treatment the source has provided . . . .")).  The

ALJ reasonably relied on the inconsistency of Dr. Manfredi's opinion with her own treatment

records and the other evidence of record in discounting her opinion.

The ALJ further discussed the internal inconsistencies of Dr. Manfredi's RFC

questionnaire in determining to give little weight to Dr. Manfredi's opinion.  (Tr. 28).  While Dr.

Manfredi assessed the number of hours plaintiff could work per day as "none," she also indicated

plaintiff would need to take frequent breaks.  (Tr. 743).  As the ALJ reasonably noted, it is not

clear why plaintiff would need to take frequent breaks given Dr. Manfredi's assessment that

plaintiff could not work at all.  (Tr. 28).  The ALJ also noted that Dr. Manfredi's assessment that

plaintiff could not use her hands to grasp, twist or do fine manipulations was inconsistent with

the May 2013 findings of neurologist Dr. Abou-Elsaad, who found no limitations involving

plaintiff's hands, and with May and June 2013 emergency department records which reflected no

neck, hand, or arm complaints.  (Tr. 28, 793-94, 803, 833, 839).

Finally, plaintiff takes issue with the ALJ's statement that Dr. Manfredi did not treat

plaintiff for allegedly disabling headaches in May 2013 (Tr. 28) when the record shows Dr.

Manfredi treated plaintiff for headaches as early as August 2012.  (Doc. 9 at 11, citing Tr. 516).

Even if the ALJ was mistaken in this regard, this is not reversible error for the reasons discussed

in connection with plaintiff's first assignment of error.  In any event, the ALJ's other reasons for

giving little weight to Dr. Manfredi's opinion constitute "good reasons" under the law and find

substantial support in the record.[4]  Plaintiff's third assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be closed on the docket

of the Court.

Date: ___3/15/16___

Karen L. Litkovitz
United States Magistrate Judge

---

[4]To the extent plaintiff argues the ALJ improperly gave "significant weight" to the opinions of the non-examining state agency physicians (Doc. 9 at 10), plaintiff has not developed this argument to any extent and has therefore waived it.  *See Rice v. Comm'r of Soc. Sec.,* 169 F. App'x 452, 454 (6th Cir. 2006); *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MUNA MATAR,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:15-cv-291
Dlott, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

23